UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE BOYKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 6868 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MARQUETTE MANAGEMENT, INC., a/k/a | ) | |
| MARQUETTE COMPANIES; DAMEN | ) | |
| LOT 2 PROPERTIES REIT, LLC; POWER | ) | |
| CONSTRUCTION COMPANY, LLC; | ) | |
| BRININSTOOL + LYNCH, LTD; | ) | |
| ERIKSSON ENGINEERING ASSOCIATES, | ) | |
| LTD; CULLEN DEVELOPMENT GROUP, | ) | |
| LLC d/b/a CULLEN CONSTRUCTION | ) | |
| MANAGEMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

After Plaintiff Steve Boykin, a handicapped individual who uses a wheelchair, toured one or more units in an apartment complex and experienced accessibility barriers, he sued the property's constructors, developers, owners, and operators—Defendants Marquette Management, Inc., Damen Lot 2 Properties Reit, LLC, Power Construction Company, LLC, Brininstool + Lynch, Ltd., Eriksson Engineering Associates, Ltd., and Cullen Development Group, LLC—alleging numerous violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*[1] Defendants now move to dismiss Boykin's third amended complaint, challenging Boykin's standing to bring this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1). Because the Court finds that Boykin has sufficiently alleged the three elements of standing at this stage of the litigation, the Court denies Defendants' motion to dismiss.

---

[1] The parties conferred about the subject property's ownership structure and Boykin amended his complaint three times to add or remove certain Defendants. *See* Doc. 17 (first amended complaint); Doc. 40 (second amended complaint); Doc. 76 (third amended complaint).

**BACKGROUND**

Boykin is a handicapped individual who uses a wheelchair.  He suffered a spinal injury in 1985 and has been a T7 paraplegic since this injury.  Defendants are constructors, developers, owners, and operators of The Lydian, a 279-unit multi-family dwelling located at 513 S. Damen Avenue in Chicago, Illinois.  The Lydian opened in January 2023.

Boykin is "in the market" for an apartment in The Lydian's neighborhood.  Doc. 76 ¶ 42.  In 2024, Boykin visited The Lydian to tour one or more units.  On his tour, he encountered and experienced accessibility barriers that "would interfere with his ability to access and use the facilities" and "caused him to feel stigmatized[ ] and experience frustration, physical exclusion, indignation, and emotional distress."  *Id.* ¶¶ 24–25.  For example, Boykin felt stigmatized after he toured one unit where "an architectural barrier in the dwelling unit bathroom" created "insufficient room for a centered side approach, and an alternate forward approach was unavailable due to the failure to install removable base cabinets."  *Id.* ¶ 32.  The unit's bathroom also did not have sufficient floor space at or near the shower and tub area to allow Boykin to maneuver his wheelchair in and around the bathroom.  Boykin also noted other accessibility barriers, such as thermostats installed too high for a wheelchair user and kitchen countertops higher than thirty-four inches above the finished floor.  In total, Boykin noticed almost twenty examples of FHA violations when he toured The Lydian.  *Id.* ¶¶ 43–48.

Because The Lydian lacked accessible and usable features for people with disabilities, as required by the FHA, Boykin felt excluded from the opportunity to live at The Lydian and deterred from renting an apartment there.  But he "expects to return" once Defendants remediate these accessibility issues to "pursue a potential rental of an apartment."  *Id.* ¶¶ 41–42.

2

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

**ANALYSIS**

Defendants challenge the sufficiency of Boykin's allegations regarding subject matter jurisdiction—a facial challenge. "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61).

I.      **Injury in Fact**

Defendants dispute whether Boykin has sufficiently alleged an injury in fact, relying on the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Defendants contend that *TransUnion* limited the ability of tester plaintiffs like Boykin[2] to sue private defendants for statutory violations without alleging a concrete injury, therefore clarifying earlier Supreme Court and Seventh Circuit precedent. Boykin responds that he is a bona fide potential renter, not a tester, but that this distinction is irrelevant because he has alleged facts sufficient to satisfy standing as described in *TransUnion*.

For decades, both the Supreme Court and the Seventh Circuit have recognized testers' standing to sue under the FHA. The Supreme Court first acknowledged tester standing in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In *Havens*, one white individual and one Black individual called an apartment complex to ask about apartment availability. The apartment complex told the white individual that the building had available apartments, but it informed the Black individual the opposite. Both individuals sued, claiming the defendant had engaged in "racial steering" in violation of the FHA. *Id.* at 366–68.

When considering each tester plaintiff's standing, the Court noted that the relevant statute, 42 U.S.C. § 3604(d), "establishes an enforceable right to truthful information concerning the availability of housing." *Id.* at 373. The Court held that "[a] tester who has been the object of a misrepresentation made unlawful under [§ 3604(d)] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* at 373–74. Because the white tester received accurate

---

[2] Although they do not formally ask this Court to consider Boykin a "tester" plaintiff, Defendants note that the lawsuit before this Court is one of four substantively similar suits that Boykin filed in this district within a six-month period. *See Boykin v. GS Aberdeen Owner, LLC*, No. 25-cv-3275, Doc. 1; *Boykin v. 160 North Elizabeth Holdings, LLC*, No. 25-cv-2738, Doc. 7; *Boykin v. The 808 Development, LLC*, No. 25-cv-2209, Doc. 8.

information, but the Black tester did not, the Supreme Court held that only the Black tester had standing. *Id.* at 374–75. The Seventh Circuit recognized *Havens*, and therefore tester standing, in *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990), and *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289 (7th Cir. 2000).

Defendants contend, however, that the Supreme Court's recent decision in *TransUnion* tightened tester standing. In *TransUnion*, a class of over 8,185 individuals sued TransUnion for "fail[ing] to use reasonable procedures to ensure the accuracy of their credit files, as maintained internally by TransUnion." 594 U.S. at 417. TransUnion disseminated "misleading credit reports to third-party businesses" related to 1,853 of the 8,185 individuals. *Id.* The Supreme Court held that the 1,853 individuals whose misleading information TransUnion disseminated to a third party suffered a concrete harm, but the remaining 6,332 individuals did not suffer harm because TransUnion only stored, rather than disseminated, their misleading information. *Id.* at 433 ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III. The remaining 6,332 class members are a different story."). Although the 6,332 individuals discovered inaccuracies in their credit reports, which violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Supreme Court distinguished between "a plaintiff's statutory cause of action to sue over the defendant's violation of federal law," and "a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. The Court concluded that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm," regardless of whether such inaccuracies violate federal law. *Id.* at 434.

The Court agrees with Defendants that *TransUnion* requires Boykin to plead more than a mere statutory violation as testers have historically pleaded. *See id.* at 426 (stating that "Article

III standing requires a concrete injury even in the context of a statutory violation" (quoting *Spokeo*, 578 U.S. at 341)); *Shumway v. Patel*, No. 21-CV-34, 2022 WL 203690, at \*2 (S.D. Ill. Jan. 24, 2022) (noting that a tester plaintiff, who visits hotel websites to determine whether the hotels are complaint with the Americans with Disabilities Act, does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" and instead must "still satisfy the elements of standing, including the injury in fact requirement," relying on *Spokeo*, *TransUnion*, and *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019)).  But the Court disagrees that Boykin failed to satisfy this requirement.  Boykin alleges statutory violations *and* concrete harm.  For example, Boykin alleges that he is a handicapped person who uses a wheelchair and who "encountered and experienced accessibility barriers that would interfere with his ability to access and use the facilities" when he toured Defendants' property.  Doc. 76 ¶ 24.  Boykin also alleges that "Defendants' discriminatory conduct has caused injury" by evoking feelings of stigmatization, "frustration, indignation, and emotional distress."  *Id.* ¶¶ 32, 33, 34, 35, 36, 53. The Supreme Court has recognized that these intangible injuries can be sufficiently concrete to satisfy Article III standing.  *See, e.g.*, *TransUnion*, 594 U.S. at 425 ("Various intangible harms can also be concrete."); *Spokeo*, 578 U.S. at 340–42 (explaining that "both history and the judgment of Congress play important roles" when determining "whether an intangible harm constitutes injury in fact"); *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) ("*[D]iscrimination itself*, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious non-economic injuries" sufficient for standing. (emphasis added) (citation omitted) (internal quotation marks omitted)); *Allen v. Wright*, 468

6

U.S. 737, 755 (1984) (summarizing that "stigmatizing injur[ies] caused by racial discrimination . . . [are] some of the most serious consequences of discriminatory [] action[s] and [are] sufficient in some circumstances to support standing"), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

The Seventh Circuit has concluded that feelings "such as annoyance, indignation, stress, intimidation or confusion are not concrete injuries" in the context of Fair Debt Collection Practices Act ("FDCPA") and data breach cases. *Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 664 (N.D. Ill. 2022) (citing *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) and *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020)); *see also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) (stating that the Seventh Circuit has "held that worry and anxiety are not the kind of concrete injury essential to standing" in data breach cases). But in discrimination cases, such as an alleged Title VII violation, the Seventh Circuit has allowed allegations of "emotional harm in the form of distress and humiliation [to] suffice[ ] as a pleading matter to establish the requisite injury in fact for Article III standing." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1065 (7th Cir. 2021). And specific to FHA cases, the Seventh Circuit has "long held that emotional distress caused by housing discrimination is a compensable injury." *U.S. v. Balistrieri*, 981 F.2d 916, 931 (7th Cir. 1992). Regardless of the Seventh Circuit's initial "skepticism on the subject," those "who experience housing discrimination suffer a cognizable injury that gives them standing to sue for a variety of Fair Housing Act violations." *Kyles*, 222 F.3d at 297 (7th Cir. 2000).

Boykin thus sufficiently pleads that he experienced an injury in fact through Defendants' discriminatory housing practices. *See Thompson v. Southgate Apartments, LLC*, No. 23-CV-970, 2024 WL 4295774, at *5 (E.D. Tex. Sept. 9, 2024) (finding that the plaintiff has alleged an

7

injury in fact sufficient for standing when considering almost identical allegations); *Rickey v. GVD Hyde Park, LLC*, No. 20-CV-881, 2021 WL 1025760, at *2–3 (E.D. Tex. Mar. 17, 2021) (same).

Although Defendants suggest that Boykin lacks standing because he has no intent to rent a unit at The Lydian, Boykin's "intent is irrelevant." *Thompson*, 2024 WL 4295774, at *3 (citing *Havens*, 455 U.S. at 373 ("In the present context, 'testers' are individuals who, *without an intent to rent* or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of [FHA violations].")). What matters is whether Boykin alleges that he suffered a cognizable injury from Defendants' discriminatory housing practices when he visited their property, which he does. *Rickey*, 2021 WL 1025760, at *2 ("[T]he FHA confers broad standing over any individual who encounters an accessibility barrier, even if they never intended to rent the property.").

Defendants rely on various district and appellate court decisions to support their argument against standing. But each decision is factually distinguishable from Boykin's third amended complaint. In *DeBoard v. Ventry Apartments, LLC*, No. 22-CV-396, 2023 WL 4123310 (N.D. Ind. June 22, 2023), *vacated*, No. 22-CV-396, 2023 WL 11930907 (N.D. Ind. July 13, 2023), the plaintiff "plead[ed] only the violation of the statute itself as injury and did "not allege that he was humiliated, frustrated, or embarrassed by the conditions at the Apartments," *id.* at *7.[3] And the plaintiffs in *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023),

---

[3] The *DeBoard* court vacated its judgment dismissing the case for lack of jurisdiction because the plaintiff moved to amend his complaint and the court found that "the propriety of his amendment will likely be decided by the United States Supreme Court next term." *DeBoard*, 2023 WL 11930907, at *1. At that time, the Supreme Court had granted certiorari from a First Circuit decision holding that a plaintiff's allegations of "the loss of dignity in feeling less than equal, enduring humiliation, frustration, and embarrassment" conferred standing for a public accommodations tester. *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259 (1st Cir. 2022). But the Supreme Court subsequently dismissed the case as moot without resolving the standing issue. *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 5 (2023).

*Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269 (5th Cir. 2021), *Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022), and *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022), did not allege that they had ever visited the properties at issue, encountered discriminatory barriers, or experienced any such cognizable injury. In comparison, Boykin pleads that he visited Defendants' property and experienced stigmatization, frustration, indignation, and emotional distress from encountering discriminatory accessibility barriers.

At the pleading stage, the Court must accept Boykin's allegations as true. But "discovery will help the parties to establish or disprove [Boykin]'s allegations of frustration, physical difficulty, indignation, [and] emotional distress" such that they may or may not survive a motion for summary judgment. *Thompson*, 2024 WL 4295774, at *5 (citing *DeBoard*, 2023 WL 4123310, at *7 ("For someone who seemingly does this for a living, such allegations [of humiliation, frustration, or embarrassment] would strain the limits of credulity.")). For now, Boykin has sufficiently alleged an injury in fact.[4]

## II.     Fairly Traceable

The Court next considers Article III's standing causation requirement. *TransUnion*, 594 U.S. at 423. Boykin "must establish that h[is] injury is fairly traceable to Defendants' design and construction of" The Lydian. *Rickey*, 2021 WL 1025760, at *3 (citing *Lujan*, 504 U.S. at 561). Defendants are developers, owners, and operators who participated in the construction of The Lydian and/or who currently control the property. The Court finds Boykin's alleged injury, stemming from the FHA violations, fairly traceable to the parties who designed, constructed, and own The Lydian. Boykin, therefore, has established the causation element of standing. *Thompson*, 2024 WL 4295774, at *6 (finding that owner, designer, and constructor defendants

---

[4] Because the Court finds that Boykin has included allegations in his third amended complaint sufficient to satisfy the first prong of the Article III standing analysis, the Court does not find it necessary to determine whether Boykin is a tester or bona fide potential renter.

9

likely caused the injury that the plaintiff allegedly suffered when she visited a property with FHA violations); *Rickey*, 2021 WL 1025760, at *3 (same).

### III.  Redressability

Finally, the Court considers Article III's redressability requirement.  *TransUnion*, 594 U.S. at 423.  Boykin requests relief for his past damages based on the stigmatization, frustration, physical difficulty, indignation, and emotional distress he incurred in visiting The Lydian. "Should [Boykin] succeed on [his] cause of action, a favorable judicial ruling is likely to redress these past harms." *Thompson*, 2024 WL 4295774, at *6.

But Defendants contend that Boykin lacks standing to seek his requested injunctive relief. As the Supreme Court has recognized, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435.  Defendants argue that Boykin has no intention of returning to The Lydian, and so he is not at risk of imminent and substantial harm.  But Defendants' argument ignores Boykin's allegations that he "expects to return to [The Lydian] once it has been remediated" and that he "is currently in the market for an apartment in the area" of The Lydian.  Doc. 76 ¶¶ 41, 42.  This means that if Boykin, or anyone similarly situated, "visits [The Lydian] and the FHA violations have not been remedied, it is certain that [Boykin] will encounter the same accessibility barriers [he] faced upon the visit made the basis of this lawsuit." *Thompson*, 2024 WL 4295774, at *6; *Rickey*, 2021 WL 1025760, at *3 ("Plaintiff requests an injunction requiring Defendants bring the Property into compliance with the FHA . . . . As this relief would redress her injury, Plaintiff has established the redressability element of standing.").

10

Accordingly, because Boykin has established that he has suffered a concrete, particularized harm that is likely traceable to Defendants and which a favorable judicial ruling will likely redress, the Court finds that Boykin has standing to bring the present lawsuit at this stage of the litigation and may proceed to discovery.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to dismiss [83].

Dated: April 21, 2026

_____
SARA L. ELLIS
United States District Judge